HAROLD E. SALISBURY, Plaintiff-Appellant, v. MARY LOU MAJESKY *et al.*, Defendants-Appellees.

Third District    Nos. 3—03—0808, 3—03—0862 cons.

Opinion filed October 14, 2004.

Patrick J. Murphy, of Lacon, for appellant.

Alan R. Howarter, of Ottawa, for appellees.

JUSTICE SLATER delivered the opinion of the court:

In case No. 96—LM—184, the plaintiff, Harold Salisbury, secured an $85,000 judgment against defendant Robert Majesky. Harold then filed case No. 01—CH—116, seeking to collect on his prior judgment and to set aside several allegedly fraudulent transfers made by Robert to his wife, defendant Mary Lou Majesky. The trial court consolidated these cases for postjudgment collection purposes.

The defendants moved to dismiss the complaints to set aside fraudulent transfers on statute of limitations grounds. The trial court denied the defendants' motions and ultimately ruled that some of the assets at issue were transferred fraudulently.

Harold appealed and the defendant cross-appealed. These two appeals were also consolidated. Because we find that the trial court erred in failing to grant the defendants' motions to dismiss, we reverse.

## I. FACTS

In 1996, Harold sued Robert for intentional battery after an incident that occurred on Robert's property (case No. 96—LM—184). On March 19, 1999, Harold secured an $85,000 judgment against Robert.

In 2001, Harold filed case No. 01—CH—116 to collect on his prior judgment. Harold filed a number of citations to discover the assets of Robert and his wife. On June 21, 2001, Harold filed a complaint to set aside the allegedly fraudulent transfer of Robert's interest in the marital residence to his wife. The defendants moved to dismiss that complaint on statute of limitations grounds. The trial court denied the motion on April 10, 2002. On that same date, the trial court found that the transfer of the marital residence was indeed fraudulent.

On November 19, 2002, Harold filed a second complaint, seeking to set aside the allegedly fraudulent transfer of three certificates of deposit (CDs) by Robert to his wife. The evidence introduced revealed that the allegedly fraudulent transfers involving these CDs all occurred between 1996 and April of 1998. The defendants were again unsuccessful in moving to dismiss on statute of limitations grounds. On June 6, 2003, the trial court found that one of these CDs, worth $30,000, was fraudulently transferred. The trial court also held that a second, $20,000 CD was not transferred fraudulently and apparently did not rule at all on the status of a third, $5,000 CD.

Posttrial motions were heard and denied on October 2, 2003. Harold appealed and the defendants cross-appealed.

## II. ISSUES AND ANALYSIS

On appeal, Harold contends that the trial court erred in failing to find both the second and third CDs fraudulently transferred. In their cross-appeal, the defendants contend that the trial court erred in failing to grant their motion to dismiss on statute of limitations grounds. Because we find it to be dispositive, we address only the statute of limitations issue.

■ A complaint may be dismissed involuntarily if the action was not filed within the time allowed by law. 735 ILCS 5/2—619(a)(5) (West 2002). In resolving a motion to dismiss, a court must assume that all well-pleaded facts are true and may consider all reasonable inferences that can be drawn from those facts. *Williams v. Board of Education of the City of Chicago*, 222 Ill. App. 3d 559, 584 N.E.2d 257 (1991). A motion to dismiss should only be granted where it clearly appears that no set of facts can be proved which will entitle plaintiff to recover. *Ogle v. Fuiten*, 102 Ill. 2d 356, 466 N.E.2d 224 (1984). We review *de novo* a trial court's ruling on a motion to dismiss. *Zelenka v. Krone*, 294 Ill. App. 3d 248, 689 N.E.2d 1154 (1997).

■ The applicable statute of limitations for this action is found in section 10 of the Uniform Fraudulent Transfer Act. 740 ILCS 160/10 (West 2002). Section 10 provides, in relevant part:

"A cause of action with respect to a fraudulent transfer *** under this Act is extinguished unless action is brought:

(a) *** within 4 years after the transfer was made *** or, if later, within one year after the transfer *** was or could reasonably have been discovered by the claimant[.]" 740 ILCS 160/10(a) (West 2002).

Below, the trial court agreed with Harold that the limitations period did not begin to run until the date Harold secured a judgment in his intentional battery case, *i.e.*, March 19, 1999. The complaints to set aside the transfers were filed in June of 2001 and November of 2002. Therefore, the trial court found that Harold had timely filed his complaints well before the March 2003 deadline. The court thus denied the defendants' motions to dismiss. We find this holding to be in error.

The aim of statutory construction is to give effect to the intent of the legislature. *In re C.M.*, 282 Ill. App. 3d 990, 669 N.E.2d 707 (1996). The best indication of that intent is the express wording of the statute, and that wording is given its plain and ordinary meaning. *Swank v. Department of Revenue*, 336 Ill. App. 3d 851, 785 N.E.2d 204 (2003).

The limitations period found in section 10(a) was previously addressed by the First District of the Appellate Court in *Levy v. Markal*

*Sales Corp.*, 311 Ill. App. 3d 552, 724 N.E.2d 1008 (2000). There, the court held that as "the clear and unambiguous wording of the Act demonstrates, the four-year limitations period begins to run on the date the challenged transfer was made. The explicit language of section 10(a) defeats any construction that the limitation period runs from the entry of judgment." *Levy*, 311 Ill. App. 3d at 555, 724 N.E.2d at 1010.

Although noting the possibility of needless litigation, the *Levy* court found that the limitations provision clearly required that in certain situations a creditor must initiate an action *before* procuring a judgment in order to preserve a fraudulent transfer claim. *Levy*, 311 Ill. App. 3d 552, 724 N.E.2d 1008. While we are also cognizant of the potential for needless litigation under the statute as written, we find the *Levy* construction to be correct.

■ Applying this construction to the case at hand, it is clear that Harold did not bring his action within four years of any of the transfers involved. The record reveals that Robert transferred his interest in the marital residence on August 30, 1996. However, Harold did not file his complaint to set aside that transfer until June of 2001, nearly five years later. Moreover, none of the allegedly fraudulent transfers related to the CDs occurred later than April of 1998. Nevertheless, Harold's complaint to set aside those transfers was not filed until November 19, 2002, well beyond the four-year time limit.

However, finding that Harold's complaints were brought more than four years after the respective transfers were made does not end the inquiry. We must still consider whether, pursuant to section 10(a), those complaints were brought "within one year after the transfer *** was or could reasonably have been discovered by the claimant." 740 ILCS 160/10(a) (West 2002). We find that they were not.

On April 8, 1999, during the course of the underlying intentional battery litigation, Harold's attorney took a discovery deposition of Robert. Robert's testimony should have put Harold on notice about potential fraudulent transfers. When Harold's attorney questioned Robert about his home and the lots on which it was located, the following exchange ensued:

"Q. Do you own them [the lots] jointly with your wife?
A. Yes.
Q. Title to your residence, is that held jointly with your wife?
A. Yes.
Q. Subject to the mortgage of the Bank of Pontiac, correct?
A. It's in her name and the mortgage is at Bank of Pontiac.
Q. Title to the real estate is in her name?
A. Yes.

Q. Was title to the real estate when you built the house originally put in her name—

A. No.

Q. —or was there a transfer of title at some point?

A. Yes.

Q. When was the transfer of title?

A. Oh, geez, I can't remember. Let me see, approximately at the time of the incident.

* * *

Q. It was done after the March 9, 1996, incident?

A. I think so, yes."

Harold's attorney also asked Robert about the defendants' other financial accounts at the Bank of Pontiac, leading to the following exchange:

"Q. Can you tell me whether there were transfers of money in the various accounts that may have existed at the Bank of Pontiac shortly after the March of 1996 incident?

A. [I] [t]ransfer money all the time, sir.

Q. Specifically in regard, though, to potential exposure and liability arising from the March 9, 1996, incident?

A. I pass money all the time, sir, taking care of my personal business."

We find that this deposition excerpt clearly shows that as of April of 1998, Harold was both suspicious of the defendants' financial activity and on notice that those suspicions were potentially justified. At that point, Harold "should have reasonably known, at the very least, that a possible cause of action may have existed for fraudulent transfer *** and [he] should have investigated further." *Gilbert Brothers, Inc. v. Gilbert*, 258 Ill. App. 3d 395, 400, 630 N.E.2d 189, 192 (1994).

Nevertheless, Harold waited until three years later—a full two years after he received his judgment—to initiate citation proceedings. His complaint to set aside the transfer of the house was also not filed until three years later, and the complaint to set aside the other transfers was not filed until six months after that. Clearly, none of these actions were filed within one year of the time Harold was or could reasonably have discovered the transfers.

We are not unsympathetic to the fact that it appears from the trial court's subsequent rulings that Robert and his wife may very well have been involved in improper financial activity, or to the fact that this activity may have left Robert without assets to satisfy the judgment against him. Nevertheless, we are not in a position to abrogate the statute of limitations or to question the wisdom of the legislature. Because Harold did not act within the limitations period prescribed in section 10(a), the trial court erred in failing to grant the defendants' motions to dismiss.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of La Salle County is reversed.

Reversed.

LYTTON and SCHMIDT, JJ., concur.