In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 13-2135

GEA GROUP AG,

*Plaintiff-Appellant*,

*v.*

FLEX-N-GATE CORPORATION and SHAHID KHAN,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:09-cv-02106-HAB-DGB — **Harold A. Baker**, *Judge*.

———————————

No. 13-2594

IN RE: GEA GROUP AG,

*Petitioner*.

———————————

Petition for Writ of Mandamus from
the United States District Court for the
Central District of Illinois.
No. 2:09-cv-02106-HAB-DGB — **Harold A. Baker**, *Judge*.

———————————

ARGUED DECEMBER 12, 2013 — DECIDED JANUARY 10, 2014

———————————

Before BAUER, CUDAHY, AND POSNER, *Circuit Judges*.

POSNER, *Circuit Judge*. Before us is an appeal by GEA Group AG from an order by the district judge partially lifting a stay of discovery in a diversity suit brought by GEA against Flex-N-Gate Corporation and its CEO, board chairman, and controlling shareholder, the American billionaire Shahid Khan. Also before us is a petition for mandamus by GEA, should we decide we don't have appellate jurisdiction. We do have appellate jurisdiction, as we'll explain, so the petition for mandamus can be dismissed as superfluous. Also before us, discussed at the end of this opinion, is a motion to seal certain documents.

The overriding issue is whether the district judge had authority to allow *any* discovery to proceed, when the fruits of the discovery might be relevant to, and might even be placed in evidence in, a pending foreign arbitration proceeding.

GEA (pronounced "gaya"), a German engineering company, in May 2004 agreed to sell one of its subsidiaries—Dynamit Nobel Kunststoff (DNK), a plastics manufacturer—to Flex-N-Gate, a U.S. manufacturer of auto parts. The price agreed on was €430 million. A clause in the sale contract required arbitration in Germany of any dispute over the contract. The sale did not close, and in October 2004 GEA initiated arbitration in Germany before the Arbitral Tribunal of the German Institution of Arbitration (see *DIS-Arbitration Rules* 98, July 1, 1998, www.dis-arb.de/scho/16/rules/dis-arbitration-rules-98-id10 (visited Jan. 10, 2013)), charging Flex-N-Gate with having broken the contract. GEA later sold DNK to a Swedish company, but at a considerably lower price than the price in GEA's contract with Flex-N-Gate.

The arbitration proceeding was pending when in 2009 GEA, not content with having initiated arbitration, brought suit in a federal district court in Illinois. The suit named as defendants not only Flex-N-Gate but also Khan, who, though as Flex-N-Gate's CEO he had been involved in the contract negotiations, was neither a signatory of the 2004 contract nor a party to the arbitration. GEA alleged that the defendants had fraudulently induced it to enter into the contract by exaggerating Flex-N-Gate's financial strength; that Khan had used his control over Flex-N-Gate to strip that firm of its assets so that it would be unable to pay whatever award the German arbitration panel made to GEA; and that Khan was Flex-N-Gate's alter ego and therefore barred from pleading limited shareholder liability and instead obligated to pay any such award even if he hadn't been complicit in a fraudulent conveyance of the firm's assets. Very oddly, GEA's complaint didn't mention the arbitration.

GEA, having sued, then asked the district judge to stay all proceedings in its suit, thus including discovery, which the defendants were eager to conduct. For in their answers to GEA's complaint, and in counterclaims (filed only by Flex-N-Gate, however), they had sought to turn the tables on GEA by charging that Flex-N-Gate had been induced to sign the sale contract by misrepresentations by GEA—Flex-N-Gate was the victim, GEA the malefactor. The judge denied GEA's motion to stay discovery. He was surprised that GEA would file a suit and immediately attempt to put it into deep freeze, and he was miffed by GEA's failing to mention the pending arbitration in its complaint and by seeming to be trying to bypass or at least duplicate the arbitration. For the suit aimed to show—as GEA was trying to show in the arbitration—that Flex-N-Gate and Khan were responsible for the

contractual breakdown. The judge thought that Khan, hav-ing been sued—gratuitously as it seemed—by GEA, and not being a party to the arbitration, should be allowed to defend himself by seeking discovery in the proceeding in which he was a party.

GEA filed a notice of appeal from the denial of its stay of discovery on March 22, 2010—three days after the German arbitration panel, having completed the arbitration at last, had issued its decision, which was to award GEA damages and costs totaling some €213.4 million (about $293.3 million). We dismissed GEA's appeal as moot, believing that a final arbitration award would end their dispute. But Flex-N-Gate was able to persuade the Higher Regional Court in Frankfurt to vacate the arbitration award—which thus turned out not to be "final" after all—and order a brand-new arbitration.

GEA had renewed its motion in the district court for a stay of discovery (indeed a stay of all proceedings in the case) pending the outcome of the German proceedings. The district judge again denied the stay, on the ground that he was unsure how those proceedings would affect the case be-fore him and didn't want to wait years to find out. GEA again appealed to us and this time we held, in an un-published order issued in June 2011, that the claims in the district court proceeding were "clearly governed by the arbi-tration provision. As a result, the case should be stayed pending arbitration." So we reversed the district court and remanded with directions that it "stay proceedings pending resolution of all arbitration proceedings."

GEA had sought review of the Frankfurt court's decision by the German Federal Court of Justice (Germany's highest court for the decision of nonconstitutional cases), but that

court declined to hear the appeal. That was in October 2012 and in December the new arbitration ordered by the Frankfurt court began, again before the Arbitral Tribunal of the German Institution of Arbitration. The primary reason the Arbitral Tribunal gave for restarting the arbitration forthwith—notwithstanding a separate pending appeal, this one by Flex-N-Gate, asking the Frankfurt court to terminate the arbitration altogether (which would spell utter defeat for GEA)—was to minimize further delay in resolving a breach of contract claim now nine years old.

After the rejection of GEA's appeal by the Federal Court of Justice, Flex-N-Gate had moved to reopen discovery in the present case. The district judge conducted a hearing in May 2013 that clarified the parties' positions. GEA made clear that its district court suit was ancillary to the arbitration: if it won a "final final" award (that is, a final arbitration award that survived judicial challenge in Germany, as the previous final award had not) and Flex-N-Gate paid the award in full, GEA's claims in the district court suit would be moot, and likewise if it lost the arbitration. But if Flex-N-Gate didn't pay in full, GEA would seek to obtain a judgment in the district court proceeding ordering Khan to pay GEA the difference between the arbitration award and what Flex-N-Gate paid toward satisfaction of the award. So if, for example, the award was again €213.4 million, and Flex-N-Gate paid €20 million, GEA would ask the district court to enter judgment against Khan for €193.4 million, on the ground either of fraudulent conveyance of Flex-N-Gate assets or of his being his company's alter ego.

GEA argued that discovery in the district court case would therefore be premature, since if it either lost the arbi-

tration, or won and was paid in full by Flex-N-Gate, it would voluntarily dismiss its case. It argued that a stay of discovery not only would be prudent in light of that circumstance but was required by the United States Arbitration Act, 9 U.S.C. §§ 1 *et seq*. Section 3 of the Act, captioned "stay of proceedings where issue therein referable to arbitration," provides that "if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." GEA argued that since some of the issues raised in the district court suit were also issues in the arbitration proceeding, a stay of "the trial of the action" in the district court was mandatory—and would extend to discovery. For the archaic term "trial of the action" in section 3 has been understood to include pretrial proceedings, such as discovery, rather than being limited to the trial phase of litigation. *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 528–29 (7th Cir. 1996); cf. *Corpman v. Prudential-Bache Securities, Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) (per curiam); *Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (per curiam); *Lummus Co. v. Commonwealth Oil Refining Co.*, 273 F.2d 613, 613–14 (1st Cir. 1959) (per curiam).

Khan responded that the issue of his liability for an arbitral award in GEA's favor was not an issue in the arbitration, because he was not a party either to the arbitration or to the

contract that was its subject matter. Hence section 3 was inapplicable and so no stay was required. The district judge agreed in part, ordering that the stay of discovery that he'd imposed pursuant to our order in the first appeal be lifted for the limited purpose of allowing Khan to conduct discovery aimed at preserving evidence that might be germane to GEA's claims against him in the district court suit. That's the order GEA appeals from. The district judge has stayed his partial lifting of the stay pending our disposition of this appeal. The order lifting the stay is inconsistent with our unpublished order directing the judge to stay all proceedings before him pending the German arbitration. But he was justified in issuing a new order on the basis of new developments since our order, which had been issued two years (short one month) earlier, in June 2011.

We have jurisdiction of the appeal. Section 16(a)(1)(A) of the Arbitration Act provides that "an appeal may be taken from an order refusing a stay of any action under section 3 of this title [Title 9]." GEA asked for a stay under section 3 of all proceedings in the district court. The district judge in the order that GEA is appealing has granted in effect a more limited stay. His refusal to grant the complete stay that GEA seeks is appealable even though the stay order is interlocutory and the appellant might not be entitled to the stay that he is seeking. *Arthur Andersen, LLP v. Carlisle*, 129 S. Ct. 1896, 1900 (2009).

We are mindful that the Arbitration Act has a separate chapter (Chapter 2), entitled Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and that sections 3 and 9 of the Act are in Chapter 1. But Chapter 2 concerns the enforcement of foreign arbitration awards, which is

not an issue in this appeal. And in 9 U.S.C. § 208, Chapter 2 expressly preserves the applicability of Chapter 1 to foreign arbitration unless there is a conflict either with Chapter 2 or with the Convention (Chapter 2 implements the Convention—it is not the Convention itself). There is no conflict in this case.

The defendants argue that the only difference between the stay that GEA sought and the stay that the district judge granted was that the broader stay sought by GEA would have prevented Khan from conducting any discovery; and since he isn't a party to the arbitration no issue involving him is "referable" to arbitration and so section 16 is inapplicable. But even if this is right, all that matters for appealability, as the *Carlisle* decision makes clear, is that the appellant have sought the stay on the authority of section 3, whether or not the stay was authorized by that section. All that's required to confer jurisdiction is thus a colorable section 3 claim, not necessarily a meritorious one.

Anyway the only reason GEA wanted the broader stay was fear that Khan, who after all controls Flex-N-Gate, will reveal to his company anything he learns in discovery that might be germane to the arbitration; the discovery may thus indeed concern "issue[s] referable to arbitration." Remember that the defendants' answer and counterclaims seek to affix blame for the breakdown of the contract for the sale by Flex-N-Gate of DNK on GEA—an issue not only germane, but potentially central, to the arbitration. This is another reason to conclude that GEA's motion, and subsequent appeal, are proper.

Coming at last to the merits, we think that what the district judge did on remand in allowing Khan to conduct dis-

covery was not only reasonable but eminently sensible. GEA should not have brought this suit. To the extent that it duplicates the arbitration by charging Khan, Flex-N-Gate's CEO, with responsibility for the breakdown of the contract, thus offering GEA a second bite at the same apple, it appears to violate the arbitration clause of GEA's contract with Flex-N-Gate. And to the extent that GEA seeks by this suit to protect itself against ending up with a worthless award if Khan has spirited away Flex-N-Gate's assets, the suit may well be premature. If GEA loses the arbitration, Flex-N-Gate's ability to satisfy an arbitration award is irrelevant and the case moot. And likewise if GEA obtains an award and Flex-N-Gate pays it in full. If GEA obtains an award and Flex-N-Gate doesn't pay it, GEA can sue Khan for fraudulent conveyance or as Flex-N-Gate's alter ego. There cannot be any serious doubt of Khan's ability to pay such an award.

But there's a rub: GEA argues that if it waits to sue Khan for fraudulent conveyance (now often called fraudulent transfer) until a "final final" arbitration award is issued (which, in Germany at least, can take a long time, as we now know), the statute of limitations governing such a suit may have expired. The statute of limitations in both the Uniform Fraudulent Transfer Act and Illinois's version of the Act is only four years, see 740 ILCS 160/10, and begins to run on the date of the transfer (or within a year after the plaintiff discovered the transfer if he had not and could not through reasonable diligence have discovered it at least a year before the four-year period expired) if the transfer was made with fraudulent intent. *Id.*; *Fidelity National Title Ins. Co. v. Howard Savings Bank*, 436 F.3d 836 (7th Cir. 2006). So the statute of limitations *might* (or might not—see below) have run had GEA waited any longer to sue. GEA contends that Khan be-

gan transferring Flex-N-Gate assets shortly after the aborted contract of sale was signed, which was in 2004. It would have been perilous for GEA to have waited beyond 2009 to sue Khan for engineering a fraudulent conveyance.

Or so GEA argues. The argument, which appears only in a short footnote in GEA's opening brief, is insufficiently developed to be a ground for reversal. Oddly, GEA's counsel led with the statute of limitations at the oral argument, but without particulars.

The idea that a claim for fraudulent conveyance aimed at evading having to pay a hypothetical future judgment accrues before the judgment is entered seems far-fetched—and would be if understood to entitle any plaintiff seeking monetary relief in a lawsuit to include a claim for fraudulent conveyance in his complaint just because the defendant might *conceivably* seek to elude a judgment against him, if he got a judgment, by squirreling away the assets needed to satisfy it. After the oral argument, however, GEA sent the court a letter briefly amplifying its statute of limitations argument by citing several Illinois cases. One of them, decided by the Illinois Appellate Court, supports GEA's position—*Levy v. Markal Sales Corp.*, 724 N.E.2d 1008, 1012–14 (Ill. App. 2000)—as does a subsequent case from that court, not cited by GEA: *Salisbury v. Majesky*, 817 N.E.2d 1219, 1222 (Ill. App. 2004). The Supreme Court of Illinois has not addressed the issue, however, and it's by no means certain that when it does it will agree with the appellate court. As forcefully argued in *Cortez v. Vogt*, 52 Cal. App. 4th 917, 935–37 (1997), the purpose of the drafters of the Uniform Fraudulent Transfer Act in eliminating the requirement that a "creditor," to be allowed to bring a suit for a fraudulent transfer, must have a

matured claim, such as a judgment or a lien, was to expand the rights of potential victims of fraudulent transfers. It was not to put them in a statute of limitations pincers, forcing them to sue prematurely in anticipation of a possible difficulty in collecting a judgment against their debtor, should they obtain such a judgment.

Being allowed to sue as a potential judgment creditor in order to prevent or rescind a fraudulent transfer is different from being *forced* to sue that early on pain of being held to be time-barred if one waits to sue until one has a judgment. Although an injury alleged when one is still only a potential judgment creditor can only be a probability of injury, because there may be no judgment (no award, if it is an arbitral rather than adjudicative proceeding), "a probabilistic harm, if nontrivial, can support standing." *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998), quoted in *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). If a postjudgment suit to *recover* assets that had earlier been fraudulently conveyed might prove futile—if the assets might by then have been concealed, or been dissipated, or have otherwise been placed beyond the reach of the judgment creditor—the potential judgment creditor faces a probabilistic harm that may entitle him to injunctive relief; "the conveyance of his property by a tort-defendant, made with intent to defraud the tort-plaintiff, is subject to invalidation as a fraudulent conveyance, *even though the liability to the prospective tort-creditor has not matured into a judgment at the time of the transfer.*" *United States v. Chapman*, 756 F.2d 1237, 1241 (5th Cir. 1985) (emphasis added).

It doesn't follow, however, that the statute of limitations begins to run as soon as the plaintiff discovers or should

through the exercise of reasonable diligence have discovered the conveyance. There is not yet a national consensus on whether it starts to run that soon, or a definitive ruling in Illinois law. (Anyway forfeiture of a ground of appeal is not redeemed by a post-argument letter to the court.) But *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 416–17 (3d Cir. 2003), like the *Cortez* decision that we cited earlier, sensibly holds that the statute of limitations does not begin to run as long as the creditor's claim has not yet matured, is still merely potential. And if this is wrong and it does start to run then, we can't understand why having filed such a claim GEA has not sought injunctive relief—why instead it has sought to stay *all* proceedings in its suit, which would include a request by it for preliminary relief pending the outcome of the arbitration. If Khan is seeking to place Flex-N-Gate's assets beyond GEA's reach, GEA by failing to seek injunctive relief and instead seeking to freeze its suit—its own suit—is assisting Khan to do so. Put differently, the only reason GEA could have for filing its suit when it did was to enjoin Khan from taking steps that might make it impossible for GEA to collect an arbitration award from Flex-N-Gate.

Not only has GEA sought no injunctive relief; it waited two years after discovering the alleged fraudulent conveyance to file suit at all. Were it to wake up at this late date (four years after suing) and seek injunctive relief, the doctrine of laches would be an insurmountable barrier. See *Teamsters & Employers Welfare Trust of Illinois v. Gorman Brothers Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002) cf. *Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*, 698 F.3d 9, 20 and n. 8 (1st Cir. 2012).

The statute of limitations could in any event have had no effect on the alter ego claim that appears in GEA's complaint, or its claim that Khan fraudulently induced Flex-N-Gate to breach its contract with GEA. For neither claim arises out of the alleged shuffling of Flex-N-Gate's assets to other provinces of Khan's commercial kingdom. If it's true that Flex-N-Gate is, in contemplation of law, Khan, then if GEA wins and Flex-N-Gate doesn't pay the award he will be liable. The statute of limitations has a possible effect only on GEA's alternative charge against him of fraudulent conveyancing of Flex-N-Gate's assets.

All this turns out to be rather a side issue, however; for the ground for reversal that GEA urges on us, in its briefs at least, is unrelated to fears, quixotic or otherwise, of the statute of limitations. The ground is that Khan will convey the fruits of his discovery to Flex-N-Gate for use against GEA in the do-over arbitration proceeding. But that is not a proper concern of the district court, or of this court. It is the concern of the foreign arbitrators and the foreign courts. Should Flex-N-Gate try to inject evidence into the arbitration from discovery conducted by Khan in the district court suit, GEA can object and the arbitrators will decide. What business is it of an American court? It was GEA that invoked German arbitration. By doing so, it subjected its claim of breach of contract to the German arbitrators and judiciary. If the arbitrators allow the fruits of Khan's discovery into the arbitration, and in doing that they are violating German law, there is always the Higher Regional Court in Frankfurt, and, if necessary, the Federal Court of Justice, for GEA to appeal to.

GEA insists that the stay of all proceedings in the present suit (that is, a stay with no exception to allow discovery by

Khan) is required by our decision in *Volkswagen of America, Inc. v. SUD's of Peoria, Inc.*, 474 F.3d 966, 972–74 (7th Cir. 2007). That decision holds that a district court should stay an entire suit pending arbitration if there is a serious danger (should it fail to do so) of inconsistent rulings or needless duplication of effort. To the same effect see, e.g., *IDS Life Ins. Co. v. SunAmerica, Inc.*, *supra*, 103 F.3d at 529–30; *AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 782 n. 5 (8th Cir. 2001). But the danger is slight in this case—certainly as long as the only activity in the district court is discovery conducted by Khan. That discovery may, it is true, result in evidence that Flex-N-Gate may want to use in the German arbitration proceeding. But if so, whether it will be permitted to do that will depend entirely on German law and practice. We have no authority over German arbitration or the German judiciary. If German arbitrators or judges decide they will, or will not, consider evidence generated in an American litigation, specifically from discovery conducted by Khan, then that will be final. Similarly, in the unlikely event that the district court proceeding continues after discovery is complete and results in the issuance of a final judgment before the German arbitration, and any German litigation arising from it, conclude, it will be the business of the German court and arbitrators whether to give collateral estoppel effect to that judgment. GEA consented to (no doubt took the lead in suggesting, as it is a Germany company) German arbitration. It can't rescind that consent by suing in an American court, or by asking the American court to enjoin the introduction in German proceedings of evidence obtained in the American case.

There is still another wrinkle to this appeal. As noted in passing earlier in this opinion, GEA's suit against Khan is

not only about problems GEA may encounter in collecting an arbitration award against Flex-N-Gate, should it obtain such an award. GEA also charges Khan with having induced the contract by fraud. Since fraud is a tort, GEA is entitled to make it the subject of a lawsuit. But it is a serious charge and Khan is entitled to defend himself against it, which he can't do, it appears, without being able to conduct discovery. Discovery may yield evidence germane to the arbitration as well, but if so—and, more to the point, if it yields evidence favorable to Flex-N-Gate—that is a consequence that GEA will have brought upon itself by its decision to sue Khan. You cannot sue someone and prevent him from defending himself.

And GEA must have known that Flex-N-Gate could have asked the district judge to provide evidence to "a foreign or international tribunal," as district judges are authorized to do by 28 U.S.C. § 1782; see, e.g., *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593 (7th Cir. 2011). The German panel conducting the arbitration between GEA and Flex-N-Gate might be considered such a tribunal. See *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 997–98 (11th Cir. 2012). (Or might not—the applicability of section 1782 to evidence sought for use in a foreign arbitration proceeding is uncertain. See S.I. Strong, "Discovery Under 28 U.S.C. §1782: Distinguishing International Commercial Arbitration and International Investment Arbitration," 1 *Stan. J. Complex Litig.* 295 (2013).)

That completes our discussion of the appeal but we have yet to consider the motion to seal certain documents—that is, to prevent public access to them. The parties have agreed in asking us to seal certain documents that have been intro-

duced in the arbitration proceeding. Their agreement is not binding on us. Secrecy in judicial proceedings is disfavored, as it makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper. The interest in allowing public access to the judicial record is thus a social interest rather than a concern solely of the litigants. That is why their agreement to seal does not bind us, and, more broadly, why "documents that affect the disposition of federal litigation are presumptively open to public view." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); see *Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002); *LEAP Systems, Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220 (3d Cir. 2011); *Goesel v. Boley Int'l (H.K.) Ltd.*, Nos. 13-2434, -2818, 2013 WL 6800977, at *1–2 (7th Cir. Dec. 26, 2013) (chambers opinion).

But the presumption can be overridden by competing interests, as in cases involving trade secrets—arguably in some cases involving settlement agreements—uncontroversially in most cases in which the plaintiff is a child victim of sexual abuse. It's overridden in this case as well, for the simple reason (related to our earlier discussion of the difference it may make that this case involves *foreign* arbitration) that parties to a German arbitration may not disclose evidence presented in the arbitration. *DIS-Arbitration Rules*, *supra*, § 43.1. That may be a good rule or a bad rule, but it is a rule that United States courts should respect as a matter of comity, see, e.g., *United States v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011)— the respect that independent sovereigns owe one another— and also because "we [Americans] are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." *Loucks v. Standard Oil Co.*,

120 N.E. 198, 201 (N.Y. 1918) (Cardozo, J.). It was lawful for the parties to agree to arbitrate their dispute in Germany, and we have no authority to rewrite the rules of German arbitration.

And so the motion to seal is granted, while for the reasons stated earlier the order of the district court partially lifting the stay of discovery is affirmed.