2024 IL App (1st) 221803

SIXTH DIVISION
June 14, 2024

No. 1-22-1803

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PENTAGON FEDERAL CREDIT UNION, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 21 CH 03496 |
| ALI POORIAN; CHICAGO TITLE LAND TRUST | ) | |
| COMPANY; TIFLIS PROPERTIES, INC.; and | ) | The Honorable |
| ATATRUK PROPERTIES, INC. | ) | Caroline Kate Moreland, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue is whether, in the case of fraudulently transferred real property where the creditor does not have actual notice of his debtor's transfer, the four-year statute of limitations under the Uniform Fraudulent Transfer Act (UFTA) (740 ILCS 160/1 *et seq.* (West 2020)) accrues when the contract of transfer is executed or when the deed is recorded. We hold the UFTA cause of action accrues when the deed is recorded. In so holding, we reject the creditor's contention that his UFTA claim did not accrue until he secured a judgment against the debtor, whether under the UFTA discovery rule or otherwise. However, for purpose of the discovery rule, a UFTA claim does not

accrue until the creditor knows or should have known of the fraudulent nature of the transfer, not just the transfer.

¶ 2    The plaintiff judgment creditor, Pentagon Federal Credit Union (Pentagon), filed a three-count complaint alleging that its judgment debtor defendant, Ali Poorian (Poorian), fraudulently transferred numerous real properties he owned in order to avoid Pentagon's judgment, in violation of the UFTA. The defendants are the transferor, Poorian, and the transferees, Chicago Title Land Trust Company (Chicago Title), Tiflis Properties, Inc. (Tiflis), and Atatruk Properties, Inc. (Atatruk). Chicago Title is trustee of certain trusts that Poorian is alleged to have a beneficial interest in, and Tiflis and Atatruk are corporations in which Poorian is alleged an interest. The circuit court dismissed all of Pentagon's UFTA claims as time barred. We reverse and remand for further proceedings.

¶ 3                                   I. BACKGROUND

¶ 4                A. Judgment is Entered Against Poorian for Failure to Repay Loans

¶ 5    Poorian, who was in the taxicab business, owned numerous taxicab medallions issued by the City of Chicago. In April 2013, Progressive Credit Union (Progressive), the predecessor in interest to Pentagon, loaned over $15 million to Poorian in 14 separate loan transactions (April 2013 Loans), all of which were scheduled to mature in April 2016. The loans were secured by the taxicab medallions that Poorian owned. In December 2014, after Poorian requested a "troubled debt restructure," Poorian and Progressive entered into a forbearance and loan modification agreement, pursuant to which Poorian acknowledged defaulting on the April 2013 Loans by failing to make the required payments and the parties agreed to restructure Poorian's payment schedule. Under the restructured schedule, Poorian would pay only interest for the next 12 months and then repay the loans over 25 years.

¶ 6      In 2015, Poorian requested an extension of his troubled debt restructuring. In February 2016, Poorian and Progressive entered into a second forbearance and loan modification agreement, pursuant to which Poorian would pay only interest for the next 18 months and then repay the loans over 30 years. In this agreement, Poorian again acknowledged he defaulted on the April 2013 Loans.

¶ 7      On May 26, 2017, Poorian defaulted on the second loan forbearance and modification agreement by failing to make his required payments. In January 2019, Progressive merged with Pentagon, making Pentagon the successor to Progressive under the April 2013 loans and the two loan forbearance and modification agreements. On February 1, 2019, Pentagon filed a complaint against Poorian based on his May 26, 2017, default under the second loan forbearance and modification agreement. On December 10, 2020, the court entered judgment against Poorian for $16,270,642.

¶ 8           B. Poorian Transfers His Real Estate While in Financial Distress

¶ 9      In September 2016, after defaulting on his loan agreements with Progressive and approximately two and a half years before he was sued by Pentagon, Poorian transferred three properties he owned to Tiflis and Atatruk. First, on September 29, 2016, Poorian executed a quit claim deed to Tiflis, transferring real estate with the address 2032 West Jarvis Avenue, 3B, Chicago. The deed was recorded on October 6, 2016. Second, on September 29, 2016, Poorian executed quit claim deeds to Atatruk transferring real estate he owned with the addresses 6259 North Claremont Avenue, #1, Chicago, and 4635 Main Street, #2A, Skokie. The deeds for the Claremont Avenue and Main Street properties were recorded on October 6, 2016, and October 7, 2016, respectively. We refer to the transfer of the Jarvis Avenue property to Tiflis and the transfer

of the Claremont Avenue and Main Street properties to Atatruk collectively herein as the "Corporate Transfers."

¶ 10    On December 2, 2016, Poorian executed quit claim deeds transferring five properties he owned to Chicago Title as the trustee under a trust agreement. These deeds were recorded on various dates in July 2017. First, on July 19, 2017, deeds were recorded for the transfer to Chicago Title of real estate located in Chicago with the addresses 5100 North Marine Drive, 11A; 3102 Argyle Street, 3; and 1626 West Estes Avenue, 2E. Second, on July 20, 2017, a deed was recorded for the transfer to Chicago Title of real property with the address 7033 West Kedzie Avenue, 1704, Chicago. Finally, on July 25, 2017, a deed was recorded for the transfer to Chicago Title of real property with the address 4734 Russett Road, R-12, Skokie. We refer to the transfers of the Marine Drive, Argyle Street, Estes Avenue, Kedzie Avenue, and Russett Road properties collectively herein as the "Trust Transfers."

¶ 11    On July 16, 2021, Pentagon filed a complaint against Poorian, Chicago Title, Tiflis, and Atatruk, alleging that Poorian transferred his real estate assets in violation of the UFTA. Count I against Poorian and Chicago Title, as trustee, alleged that the Trust Transfers violated the UFTA. Count II against Poorian and Tiflis, and count III against Poorian and Atatruk, alleged that the Corporate Transfers violated the UFTA. Pentagon's complaint further alleged that "Poorian has an interest or control" over Chicago Title, Tiflis, and Atatruk and the "transfers to [Chicago Title, Tiflis, and Atatruk] *** were substantially all of Poorian's assets leaving him unable to pay his debt to [Pentagon]." With respect to the Corporate Transfers, Pentagon acknowledged the deeds were recorded in October 2016 but alleged it "only became aware that the transfer[s] to [Tiflis and Atatruk] may have been a fraudulent conveyance on or about January 2021."

4

¶ 12    Chicago Title, as trustee, did not appear in this action. As far as we can tell from the record, Chicago Title's interests as trustee were represented by Poorian. We also note that Poorian, Tiflis, and Atatruk were represented by the same attorney.

¶ 13    On October 7, 2021, Poorian, Tiflis, and Atatruk (Defendants) moved to dismiss on two bases under section 2-619 of the Civil Practice Law. 735 ILCS 5/2-619 (West 2020). First, with respect to the Trust Transfers, the defendants argued Pentagon's complaint was untimely under the UFTA four-year limitation period because a transfer occurs—and the statute of limitations thus accrues—when the deed is executed, not when it is recorded. Here, Pentagon filed its complaint on July 16, 2021, more than four years after the Trust Transfer deeds were executed in December 2016, but less than four years after the Trust Transfer deeds were recorded. Second, with respect to the Corporate Transfers, the defendants argued Pentagon cannot rely on the UFTA discovery rule because Pentagon did not allege any facts "as to why the transfers were discovered so late."

¶ 14    Pentagon disputed the defendants' interpretation of the UFTA statute of limitations, asserting its complaint was timely because the limitation period did not accrue until the Trust Transfer deeds were recorded. Thus, the complaint, which was filed on July 16, 2021, was within the four-year limitation period because the earliest Trust Transfer deed was recorded on July 19, 2017. With respect to the Corporate Transfers, Pentagon argued that the UFTA discovery rule applies because it did not learn of them until judgment was entered against Poorian for breach of the second loan forbearance and modification agreement in December 2020. Pentagon asserted that it could not have brought a UFTA claim prior to the December 2020 judgment against Poorian because it would have been premature or moot.

¶ 15    In a written order entered on June 6, 2022, the circuit court granted the Defendants' motion to dismiss with prejudice. The circuit court reasoned that the Trust Transfers occurred when the

deeds were executed because, at that point, Poorian "released any and all rights to the [properties] and the grantee, [Chicago Title] took possession" of the properties. Therefore, "such a release and change in possession constitutes a transfer under the UFTA." The court also found that the UFTA claims relating to the Corporate Transfers were time-barred because the transfers took place when the deeds were executed and the UFTA discovery rule did not apply because Pentagon "fail[ed] to state an explanation of *why* the alleged fraud was not discovered" within the four-year period. (Emphasis in original.)

¶ 16 Pentagon filed a motion to reconsider, asserting the trial court's application of existing law was erroneous. After briefing, the trial court denied Pentagon's motion, and Pentagon timely appealed.

¶ 17                                    II. ANALYSIS

¶ 18 We review dismissals under section 2-619(a)(5) of the Civil Practice Law (*id.* § 2-619(a)(5)) *de novo*. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004). A section 2-619 motion to dismiss allows litigants to "dispose of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a jury trial." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). A motion to dismiss brought under section 2-619(a) "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. If the grounds on which defendant seeks dismissal do not appear on the face of the pleading, the motion must be supported by an affidavit. 735 ILCS 5/2-619(a) (West 2020). The movant seeking dismissal under section 2-619(a)(5) bears the burden of establishing the applicable limitation period and the untimeliness of the claims, pursuant to that limitation period. *Landreth v. Raymond P.*

*Fabricius, P.C.*, 2018 IL App (3d) 150760, ¶ 27. Factual disputes about when a claim arose or the applicable limitation period cannot be resolved on a section 2-619 motion. *Id.*

¶ 19                              A. Count I—The Trust Transfers

¶ 20    Pentagon argues that its UFTA claim against Poorian and Chicago Title is timely because the statute of limitations did not accrue until the deeds for the Trust Transfers were recorded. Poorian responds that the trial court correctly concluded that a transfer under the UFTA is made—and the statute of limitations thus accrues—when a deed is executed, not when it is recorded. We review the applicability of a statute of limitations *de novo*. *McGinley Partners, LLC v. Royalty Properties, LLC*, 2021 IL App (1st) 200390, ¶ 60.

¶ 21    Section 10(a) of the UFTA states:

"A cause of action with respect to a fraudulent transfer or obligation under [the UFTA] is extinguished unless action is brought:

*** within 4 years after the *transfer was made* or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]" (Emphasis added.) 740 ILCS 160/10(a) (West 2020).

If we conclude that the Trust Transfers were made when the deeds were recorded, then Pentagon's complaint is timely. If, however, we conclude that the transfers were made when the deeds were executed, then Pentagon's complaint is time-barred.

¶ 22    Two provisions of the UFTA inform our analysis. First, section 2 of the UFTA defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." *Id.* § 2(*l*). Second, and critical to our review, section 7 of the UFTA states that a "transfer is made"

"with respect to *** real property *** when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee[.]" *Id.* § 7(a)(1).

¶ 23 "The aim of statutory construction is to give effect to the intent of the legislature." *Salisbury v. Majesky*, 352 Ill. App. 3d 1188, 1190 (2004) (construing the meaning of section 10 of the UFTA). "[The best indication of that intent is the express wording of the statute, and that wording is given its plain and ordinary meaning." *Id.* Where an intent is clearly ascertained from the plain language of the statute, "that intent must prevail." *Levy v. Markal Sales Corp.*, 311 Ill. App. 3d 552, 555 (2000). If multiple provisions of a statute shed light on the intent of the legislature, "[w]e must read all parts of the statute together and not in isolation, so as to produce a harmonious whole." (Internal quotation marks omitted.) *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 31.

¶ 24 Section 7 of the UFTA explicitly states that a transfer is made "when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor *** cannot acquire an interest in the asset that is superior to the interest of the transferee." 740 ILCS 160/7(a)(1) (West 2020). A good faith purchaser, also known as *bona fide* purchaser, " 'of an interest in property takes that interest free and clear from all claims except those of which he has notice.' " *Schaffner v. 514 West Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1045-46 (2001) (quoting *La Salle National Bank v. 850 De Witt Condominium Ass'n*, 211 Ill. App. 3d 712, 718 (1991)). Notice may be actual or constructive and " ' "contemplates the existence of circumstances or facts either known to a prospective purchaser or of which he is chargeable with knowledge which imposes

upon such purchaser the duty of inquiry." ' " *Id.* at 1046 (quoting *La Salle National Bank*, 211 Ill. App. 3d at 719, quoting *Burnex Oil Co. v. Floyd*, 106 Ill. App. 2d 16, 21 (1969)).

¶ 25    In *McGinley,* the court considered a "transfer" of patents and trademarks under the UFTA and concluded that a transfer of such intangibles is made once the transfer is perfected by recordation. *McGinley*, 2021 IL App (1st) 200390, ¶ 68. The court relied upon federal patent and trademark laws to determine that "until the assignments were recorded, the transfers were not 'made,' since a subsequent purchaser could obtain a superior interest." *Id.* Although *McGinley* considered a claim regarding property other than real estate under section 7(a)(2) of UFTA, the language of section 7(a)(1) and (a)(2) is identical in stating a transfer is so far perfected only when a third party cannot acquire an interest "that is superior to the interest of the transferee." 740 ILCS 160/7(a)(1)-(2) (West 2020).

¶ 26    As the court did in *McGinley*, we look to the substantive law governing transfer of the asset at issue—here the Conveyances Act (765 ILCS 5/0.01 *et seq.* (West 2020))—to determine whether a subsequent purchaser or creditor can acquire an interest superior to that of a transferee. The Conveyances Act states:

> "All deeds, mortgages and other instruments of writing which are authorized to be recorded, *shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice*; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." (Emphasis added.) *Id.* § 30.

In *Farmers State Bank v. Neese*, 281 Ill. App. 3d 98, 105 (1996), we held that a deed "*does* have to be recorded to be enforceable against the third parties listed in the Conveyances Act." (Emphasis

in original.) In Illinois, creditors receive the same protections as *bona fide* purchasers. *Id.* at 106. "[I]t would be impossible to rely upon the land records" unless a deed is recorded for purposes of determining a creditor and subsequent purchaser's interest in a property. *Id.* Although the "general rule in Illinois is that a deed takes effect upon execution," the Conveyances Act has "enshrined in Illinois property statutes" the principle that deeds " 'shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record.' " *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 53 (quoting 765 ILCS 5/30 (West 2012)). In Illinois, third parties are given constructive notice of a conveyance once an instrument is recorded with the office of the recorder of deeds. See *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 27.

¶ 27    Under the Conveyances Act, "a transferee's title to real property is protected against a bona fide purchaser only after recording of the deed." *PNC Equipment Finance, LLC v. Zilberbrand*, No. 12-cv-03074, 2013 WL 1278602, at *2 (N.D. Ill. Mar. 28, 2013); *In re Arnold*, 483 B.R. 515, 519 (Bankr. N.D. Ill. 2012) (applying the Conveyances Act to find that "[u]nder Illinois law, a mortgage must *** be recorded before a lien arises in the debtor's property that will be effective as to all creditors and subsequent purchasers"); *In re Knippen*, 355 B.R. 710, 723 n.3 (Bankr. N.D. Ill. 2006) (under the Conveyances Act, a "transfer was not effective as to third parties, such as the Trustee and the Debtor's creditors, until the deed was recorded in accordance with Illinois law"). Therefore, the Trust Transfers were "made" for purposes of the UFTA when the Trust Transfer deeds were recorded, not when they were executed. Hence, Pentagon's UFTA claims relating to the Trust Transfers are timely because they were filed within four years of the date that the Trust Transfer deeds were recorded. Our conclusion aligns with other states. See *e.g.*, *Biliouris v. Patman*, 751 F. App'x 603, 605 (5th Cir. 2019) (Under Texas law, a UFTA cause of

10

action was time-barred four years after the deed was recorded); *In re Webster*, 629 B.R. 654, 672 (Bankr. N.D. Ga. 2021) (Under Georgia law, UFTA cause of action was time-barred four years after the deed was recorded); *In re Demis*, 191 B.R. 851, 860 (Bankr. D. Mont. 1996) (Under Montana law, UFTA cause of action was time-barred two years after the deed was recorded); *Duffy v. Dwyer*, 847 A.2d 266, 270-71 (R.I. 2004) (Under Rhode Island law, UFTA cause of action was time-barred four years after the deed was recorded).

¶ 28    The Defendants nevertheless contend that because section 7 of the UFTA uses the word "perfected" rather than "recorded," the plain language of the statute indicates that recording is not the only way by which a real property transfer is made for purposes of the four-year statute of limitation. We agree, but this does not help the Defendants. Giving the "fullest, rather than the narrowest, possible meaning" (*Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009)) to the term "perfected," it could include instances where a third-party creditor such as Pentagon is on notice that the deed was executed even though the deed was not recorded. See *Federal National Mortgage Ass'n v. Kuipers*, 314 Ill. App. 3d 631, 638 (2000) (the Conveyances Act provides that for "third parties who did not have notice" of a transfer, "the effective date *** is the date of recording"). The Conveyances Act states a deed shall take effect when recorded if third parties are "without notice." 765 ILCS 5/30 (West 2020). "Possession of property [can be] equivalent to the recording of a deed both as to subsequent purchasers and as to judgment creditors ***." *Beals v. Cryer*, 99 Ill. App. 3d 842, 844 (1981); *Banco Popular v. Beneficial Systems, Inc.*, 335 Ill. App. 3d 196, 210 (2002) (a party's possession of the property "may have been sufficient" to charge a judgment creditor with "constructive notice, notwithstanding [the party's] failure to record her deed"). Thus,

either actual or constructive notice can signify that a transfer of a property interest is perfected. *Beals*, 99 Ill. App. 3d at 846.

¶ 29 However, "[i]n order for possession to be equivalent to recording, it must provide some measure of notice to the outside world of the possessor's interest in the land," meaning that ownership "must be open, visible, exclusive and unambiguous." (Internal quotation marks omitted.) *Id.* at 844-45. Determining whether an interest has been perfected in the absence of recordation "depends upon the facts of each case," but "bare possession, without more, is not sufficient." *Id.* In *Beals*, the court found that "[i]mprovements or acts of dominion over land" that "indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land" could show possession equivalent to recording. *Id.* at 844.

¶ 30 The Defendants maintain that because they took possession of the properties on the date the Trust Transfer deeds were executed, the statute of limitations accrued on that date. However, the Defendants offered no facts to show that they maintained visible, open, exclusive, and unambiguous possession of the properties at or after the point of execution so that any subsequent purchaser would have notice of the transfers. Because the Defendants bore the burden under a section 2-619(a)(5) motion to dismiss to prove Pentagon's claims are time-barred (*Landreth*, 2018 IL App (3d) 150760, ¶ 27), and failed to put forth any facts to suggest that a subsequent purchaser would be on notice of their possession of the subject properties, the Defendants' possession argument fails. On this record, we find that the transfers were not perfected until the Trust Transfer deeds were recorded on July 19, 2017, and July 25, 2017.

¶ 31 The Defendants' reliance on *Salisbury*, 352 Ill. App. 3d 1188, is misplaced. There, the issue was whether the statute of limitations accrues when a judgment is entered or when the transfer is made. *Id.* at 1190-91. The court found that the UFTA makes clear that the statute of limitations

accrues when the transfer is made, not when a judgment is secured. *Id.*; see *Levy*, 311 Ill. App. 3d at 555 ("[t]he explicit language of section 10(a) defeats any construction that the limitations period runs from the entry of judgment" in an underlying lawsuit). However, unlike here, no issue was raised in *Salisbury* about when the transfer was made.

¶ 32    Because Pentagon filed its complaint less than four years after the Defendants recorded the Trust Transfer deeds, we conclude that Pentagon's complaint was timely under section 7 of UFTA. Therefore, we reverse the circuit court's order dismissing count I against Poorian and Chicago Title relating to the Trust Transfers.

¶ 33                            B. Count II and III—The Corporate Transfers

¶ 34    Pentagon next asserts the trial court erred in dismissing with prejudice its UFTA claims regarding the Corporate Transfers in counts II and III of the complaint against Tiflis and Atatruk, respectively. Pentagon acknowledges that these UFTA claims were filed more than four years after the transfers were made but argues that the trial court erred in not applying the UFTA discovery rule and that the trial court should have permitted it to amend its complaint. Again, Pentagon raises a question of law, for which our standard of review is *de novo*. *Livingston v. Department of Employment Security*, 375 Ill. App. 3d 710, 715 (2007).

¶ 35    We can quickly dispense with Pentagon's contention that it could not have discovered Poorian's fraudulent transfers before it obtained judgment against him in December 2020 because "bringing a fraudulent transfer claim prior to the entry of judgment in a contested matter might have rendered the claims under [the UFTA] moot or premature." This argument has nothing to do with the discovery rule. The "clear and unambiguous wording of [the UFTA] demonstrates[ ] the four-year limitations period begins to run on the date the challenged transfer was made." *Levy*, 311 Ill. App. 3d at 555. "The explicit language of section 10(a) defeats any construction that the

limitations period runs from the entry of judgment" in an underlying lawsuit. *Id.* A cause of action under the UFTA accrues where a "transfer became effective, and the limitations period is not tolled until the creditor's claim is reduced to judgment." *Id.* at 557. "Although a creditor may elect to pursue his claim to judgment before instituting a fraudulent transfer action, he does so at the risk of losing his right to relief." *Id.* For better or worse, the UFTA is explicit in its directive and "plainly contemplates that such provisional litigation may be necessary under certain circumstances." See *id.* at 557-58. ("As drafted, the limitations provision requires a creditor in certain instances to institute action before judgment in order to preserve his claim against the fraudulent transfer. Although a creditor may elect to pursue his claim to judgment before instituting a fraudulent transfer action, he does so at the risk of losing his right to relief.") As *Levy* explains, the UFTA's "definitions of 'creditor' and 'claim' clearly indicate that a judgment is no longer a precondition to relief." *Id.* at 559 (citing 740 ILCS 160/2(c), (d) (West 1996) (section 2(c) defining "claim," in part, as "a right to payment, whether or not the right is reduced to judgment" and section 2(d) defining "creditor" as "a person who has a claim")); see *Salisbury*, 352 Ill. App. 3d at 1190-91 (agreeing with *Levy*'s statutory construction). Thus, we reject the argument that

Pentagon's UFTA claims did not accrue before it obtained judgment against Poorian in the underlying action.

¶ 36    However, we agree with Pentagon that the trial court erred in not granting it leave to amend its complaint to allege facts to show that its claims regarding the Corporate Transfers were saved by the UFTA discovery rule. Again, section 10(a) states:

"A cause of action with respect to a *fraudulent transfer* or obligation under [the UFTA] is extinguished unless action is brought:

*** within 4 years after the *transfer* was made or the obligation was incurred or, if later, within one year after the *transfer* or obligation was or could reasonably have been discovered by the claimant[.]" (Emphases added.) 740 ILCS 160/10(a) (West 2020).

We are not aware of any Illinois reviewing court that has explicitly considered whether it is the discovery of the transfer or the discovery of the fraudulent nature of the transfer that is key to any analysis under section 10(a). However, our sister states interpreting this section have held that the phrase "transfer or obligation" found in section 10(a) unambiguously refers back to the antecedent language, "a fraudulent transfer or obligation," at the beginning of the section. Therefore, the discovery rule plainly refers to the discovery of the fraudulent nature of the transfer, not merely the discovery of the transfer. See, *e.g.*, *Official Committee of Unsecured Creditors of Great Lakes Quick Lube LP v. Theisen*, 2018 WI App 70, ¶ 14, 384 Wis. 2d 580, 920 N.W.2d 356 (concluding that "the second use of the phrase 'transfer or obligation' is referencing the phrase 'fraudulent transfer or obligation' just a few words earlier. The use of the definite article ('the') in front of the second use of the phrase makes clear that it is referencing the antecedent 'fraudulent transfer or obligation' already mentioned."); *Freitag v. McGhie*, 947 P.2d 1186, 1189 (Wash. 1997) (*en banc*)

("Common sense and the statutory purpose of the UFTA necessitate a finding that the statute begins to run with the discovery of the fraudulent nature of the conveyance."). We agree that one-year period in section 10(a) begins to run when the plaintiff knew or should have known of the fraudulent nature of the transfer.

¶ 37    This conclusion is consistent with our general interpretation of the UFTA discovery rule. "[T]he effect of the discovery rule [under the UFTA] is to postpone the starting of the statute of limitations until a party knew or should have known of his injury." *Gilbert Brothers, Inc. v. Gilbert*, 258 Ill. App. 3d 395, 399 (1994). The "event which triggers the running of the statute of limitations is not the first knowledge the injured person has of the injury, and, at the other extreme, it is not the acquisition of the knowledge that one has a cause of action against another." *Id.* Rather, the one-year period under the discovery rule commences "when a person knows or reasonably should know of his injury and that it was wrongfully caused." *Id.* An injury is wrongfully caused when the injured party has (1) sufficient information that its injury was caused by the actions of another and (2) sufficient information to " 'spark inquiry in a reasonable person as to whether the conduct *** might be legally actionable.' " *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, ¶ 52 (quoting *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 23) (interpreting the UFTA discovery rule). The injured party must have more than mere suspicion that a wrongdoing occurred, but the injured party does not need actual knowledge of the wrongdoing or that an actionable wrongdoing was committed before the limitation period begins. *Id.* ¶¶ 52-53.

¶ 38    Therefore, Pentagon's acknowledgement that the recording of the Corporate Transfer deeds put it on constructive notice of their existence is not dispositive of our inquiry. Rather, at issue is when Pentagon had sufficient information to " 'spark inquiry in a reasonable person as to

whether the conduct \*\*\* might be legally actionable.' " *Id.* (quoting *Mitsias*, 2011 IL App (1st) 101126, ¶ 23). Here, the record indicates that the properties were transferred to corporate entities Atatruk and Tiflis. However, there is nothing in the record to show that Pentagon was aware that Poorian was a shareholder of those corporations. Nor is there anything in the record about the sale price of each of the subject properties or about Pentagon's knowledge thereof. Accordingly, we cannot say whether Pentagon's UFTA action regarding the Corporate Transfers is timely or not under the discovery rule. Consequently, we reverse and remand this case for further proceedings consistent with our ruling. On remand, the circuit court shall grant Pentagon leave to amend counts II and III of the complaint. See *Gilbert Brothers*, 258 Ill. App. 3d at 399 ("An action brought under the fraudulent conveyance act is time barred unless the complaint contains an explanation of why discovery of the alleged fraud could not have occurred prior to the expiration of the limitations period.").

¶ 39                                    III. CONCLUSION

¶ 40    The judgment of the circuit court is reversed and remanded with directions.

¶ 41    Reversed and remanded.

*Pentagon Federal Credit Union v. Poorian*, **2024 IL App (1st) 221803**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CH-03496; the Hon. Caroline Kate Moreland, Judge, presiding. |
| **Attorneys for Appellant:** | Eric J. Malnar, of Huck Bouma, PC, of Wheaton, for appellant. |
| **Attorneys for Appellee:** | Cornelius P. Brown and Amy E. Daleo, of Cohon Raizes & Regal LLP, of Chicago, for appellees Ali Poorian, Tiflis Properties, Inc., and Atatruk Properties, Inc. |
| | No brief filed for other appellee. |